18-6119. You may proceed, yes. Good morning, your honors. May it please the court. My name is Don Cherez from Las Vegas, Nevada, and I'm the attorney for the appellant. And I want to focus on three things. Before you go there, let me ask you this. Is your client a United States citizen? He is, your honor. What is the relief you're asking for in this writ? We're asking to vacate the judgment because there was an improper variance from the indictment where they alleged that he had done something in February 2002, rather than alleging that it was in July 2001. Because it's a writ of court notice, that's because your client's not incarcerated, right? That's correct. So you have to show some prejudice if the writ's not granted, correct? Correct. What is that prejudice if this To begin with, your honor, he has essentially tried to maintain his innocence of the original Mann Act charges. And secondly, he believes that he pled guilty to something. What is he worried about? It says in your papers he's worried about deportation. Yes, your honor. Okay, how can you take away their citizenship? They took away his passport. You can take away someone's citizenship? Under the current administration, yes, they are doing that, your honor. Based on falsity and obtaining. Pardon? But that's not based on their having committed some crime unrelated to their obtaining citizenship, is it? That is. It's, but there's, as I understand it, tell me, I've heard that sort of statement and it surprised me as much as other members of the panel. But if someone has lived here for a long time and they can't show that they were actually born here, that might be an issue. Or if they lied to become naturalized. Is he a naturalized citizen? He is a naturalized citizen. Is there any claim of any misconduct with respect to obtaining the naturalization? No, your honor. Okay, so what's the problem? Okay, well, how could he lose citizenship? They can begin denaturalization proceedings. Based on what? Well, they could say that the way you obtained your legal permanent residence was based on fraud or. But that's got nothing to do with these charges, right? That is correct, your honor. Okay, so he might, he might have a concern, but it's not because of this case. It's not because of this prosecution. He's not going to lose his citizenship as a result of anything related to this prosecution, is he? As of today, no, your honor. Okay. All right. So that goes, gets back to Judge Murphy's question. What, what sort of relief does he want? He's not going to get a court order now saying you can't denaturalize him if he fraudulently obtained his naturalization. All we can do is issue an order with, with respect to this prosecution. So you're not going to get the relief you're talking about here, protecting him from losing his citizenship. What relief are you seeking? Well, he's seeking to vacate the conviction because he believes he pled guilty to something to, the indictment was incorrectly pled. So, so he wants to vacate the conviction? Yes, he does. He's also a medical doctor, your honor. So I think one of the other things that is primary in his mind is, will I ever be able to practice medicine again? Is he a lawyer also? He is a lawyer. And, and to be very honest, he's drafted all of these petitions. Let, let me ask you a question. Does that make a difference that he's a lawyer with respect to your claims that his counsel didn't explain things good enough to him? Well, I would say, yes, it does, because a lot of this has to do with immigration law and immigration law is extremely complex. And so in a sense, the trial lawyer knew no difference between what is a fiance visa application and an immigrant visa application, or there's two different kinds of affidavits of support. An I-134 that you file at the U.S. Embassy overseas, which was actually filed in this particular case, and an I-864 that was filed, I believe, in New York City after he married his wife and was trying, and did obtain a green card for her. Let me ask you another question. Okay. So I think the answer to that actually was, you don't think that because he's a lawyer that it makes any difference? The lawyer had to, his own counsel had to explain it to him just as though they would someone who was not sophisticated in the law. It didn't, it didn't like decrease his counsel's duty as far as how much they had to say. It's the same as if it was an uneducated person with no, with no training in the law. Is that right? I would say yes. Okay. Only because of these, only because of the unique, complex circumstances. Well, you may, you may be right. I'm just, I'm just testing it out. I, let me, let me ask you another question about the changing of the information. How did that, how did that hurt him? I mean, so he pleads guilty. He gets sentenced. He serves his sentence. Somewhere in the background here, we have an amendment of the information that he claims was improper. He didn't get any additional time. It's not like he's been sentenced another time on it, or anything like that. And, and he's admitted to the conduct that was the basis of the crime. How, how has he, has he been harmed? Well, he's been harmed because essentially was this a material misrepresentation? His lawyer convinced him, take the deal. This is the material misrepresentation. I would say, so what? His wife was not 18 years of age. She was two or three years younger. So he lied about it, but would it have made a difference if they would have presented this information to the U.S. Embassy overseas or to the immigration officer in New York City? I think with Maslanya case that was decided by the United States Supreme Court in June of 2018, the issue about what is a material misrepresentation has come to the fore. I think that's what ignited and my misrepresentation wasn't material. My defense lawyer should have not taken this deal. He should have gotten something else. Thirdly, right. I mean, but that, that doesn't, it's the court, I mean the 10th circuit and they're denying the certificate of appealability. They've educated Mr. Miles to say this was substantial. The variance between the February 2002 affidavit of support versus the July 2001. Twice they've said that, but we're not going to listen to your claim because you have this appellate waiver. And it was the U.S. attorney that educated Mr. Miles to say, oh, but the appellate waiver doesn't apply if the judge exceeds the guidelines and the judge gave him five years rather than the zero to six months recommended guidelines. So he's here, he's smart enough to learn from what you're teaching him and that kind of thing. Now, I didn't, I didn't teach him that I was, I wasn't a judge yet. Well, you had a question? By my account, this is the second petition for writ of Coram Novus. I believe so, your honor. Did you sit down and go over this, your draft of this petition for writ with your client before you filed it? I read it before it was filed. No, and you went over it with your client? Yes. So your client knew what was in there. In there you say that his defense lawyer provided constitutionally ineffective assistance, and I'm reading verbatim, by failing to advise Dr. Miles, an alien national of the risk of deportation arising from his guilty plea. Is that true? That he's risking deportation? No, that he's an alien national. I thought we established that he was a United States citizen. He has dual citizenship. He's a citizen of Sweden. But what do I like? Okay. The fact that he has Swiss citizenship. Sweden. And if he has United States citizenship, he cannot be an alien national. Isn't that correct? Yes, your honor. Then why is this asserted in here, that he was an alien national in a pleading filed in the district court, seeking the relief of Coram Novus? How can that be? That is not true. Is that correct? We have a petition here that contains untruths. Isn't that correct? Well, isn't that correct? That is not true. He's not an alien national. That is correct, your honor. And he knew what was in this petition that you filed for him. Yes. Thank you. This is not totally unrelated, but a different aspect. Okay. He appealed and lost. Correct. He filed the 2255 and lost. Yes, he did. He filed the Coram Novus first petition and lost. Yes, he did. This is his second Coram Novus petition. Yes, correct. There's a doctrine called abuse of the writ. And it seems to me, tell me where I'm wrong, that every claim you're making now has either been previously resolved in a writ proceeding, or it could have been raised in a previous writ proceeding. Coram Novus or 2255. If that's the case, then this case, you can't get any relief because it's abuse of the writ. You're not raising anything that you couldn't have raised before or didn't raise before. What could he raise here that he couldn't have raised before and didn't raise before? Well, he did not raise the issue before because of the appellate waiver. What issue did he not raise before? The thing about the improper variance with the indictment that the trial judge called an inconsequential mistake. You don't think we decided that in a prior appeal in this court, we stated that it's clear from the pleadings, from the plea agreement, and from his statements that he knew exactly what he was pleading to. There might have been a mistake about the date in the indictment. That might have given a statute of limitation defense, but that was waived with the plea, but he knew precisely what he was pleading to. He knew which document was allegedly falsified. So that's already been resolved. I don't see how you can say he didn't know. He might be challenging that again, but this court has already ruled on that point. Has it not? Well, I believe, your honor, that the court has ruled on the appellate waiver and they didn't necessarily go to the underlying foundation as to what he was raising. But you agree that we That's resolved. It's abusive of Ritt to bring it again, absent some extraordinary circumstance which is not present here. So what else could he raise here that he couldn't have raised before? The Padilla claim was available at his first quorum notice, Ritt. What was available? The Padilla claim, which doesn't make any sense anyway because he couldn't be deported. So that claim would have been available. That's what Judge Murphy has been pursuing. But even if it was available, even if he weren't a citizen, he could have raised that claim in an earlier Ritt proceeding. Could he not? Padilla was decided before March 2010. Yes. And his first quorum notice petition was after that. Maybe his 2255 motion was after that. I think it was 2011. Okay. So what can you bring before us that's not an abuse of a Ritt here? Well, his main contention, your honor, is that he pled something that the variance was improper and therefore he should not have pled guilty to that and his lawyer misled him into allowing him to plead to that when he could have raised earlier material misrepresentation and issues like that. And he could have raised that issue in his 2255 or his first quorum notice. Yes, your honor. And he didn't, did he? No, he didn't. So you agree that it would be an abuse of the Ritt to allow him to raise it now, absent something extraordinary. Well, I'm not going to concede that, but I'm not going to argue with the court. Okay. Thank you. That's good enough. He's smart and he learns and he I would submit it. I see my time is almost up. Thank you, your honor. Thank you. I think you heard the gist of what was going on. Do you have something to add? Your honor, first of all, may it please the court to concur on behalf of the United States. The only thing that I'd like to add mainly deals with the appellate waiver. Uh, the government attempted at the motions panel stage to enforce the appellate waiver. And this court denied that motion. The issue that one of the issues that I Denied it or left it to the panel to decide? It denied it in part and deferred it in part or denied without prejudice in part. As to two ineffective issues. It denied it as to two ineffective issues. Yes. The, one of the issues that we raised in our response brief, I would urge the court to at least address in whatever opinion is coming, uh, is how to deal with these hybrid petitions. As this court explained in Han, uh, where the government is pushed to fully brief the issues, uh, despite an appellate waiver, it is robbed of the benefit of its waiver of its plea agreement. There are three different options that the court has. It could do what it did in this case and push everything to the merits. Uh, if this court says that that's going to be how it operates in the government, obviously where there is a hybrid appeal, just won't file a motion to enforce. Uh, but again, that would rob the government of the benefits of its bargain. And also it would encourage defendants to include frivolous non-waived issues in order to get before a full briefing, right? To get full briefing on all issues. As was the case here, Dr. Miles alleged an effective assistance council based on the deal, even though he was a citizen, which pushed it into, uh, past the motion to enforce stage. Uh, the second option, the option the government pursued earlier would be to handle this, uh, through a motion to enforce, uh, any of their summary of permits or something along those lines. I understand why the court might be reluctant to do that because there would be non-waived issues that would not get plenary briefing, uh, that could be handled through a lot of server plans or things like that. The third alternative, and this might be the best alternative and presents a hybrid solution to the problem with the hybrid appeal, is instead of what the, uh, the motions panel did here in future cases that bring such a hybrid appeal to enforce the appellate waiver as to those issues which are barred by the appellate waiver, which here would be things like the change in the information, uh, or the variance of the superseding information, pretty much everything except the two ineffective assistance of council claims. And then refer those two claims to, uh, a hearing on the merits. That would have, in this case, greatly reduced the briefing, uh, largely because the actual and legal disputes, I think, are fairly, uh, well, I guess I didn't pay a lot of attention to what the merits, to what the motion panel did, but what did the motions panel, I thought you said it granted the motion, your motion, that we not hear anything except the ineffective assistance claims. Is that what you're saying? No, your honor. What the motions panel did was it denied, uh, essentially with prejudice because the ineffective assistance of council claims fell outside the scope of the appeal waiver, and it denied without prejudice to raising in the merits briefing the claims that would have fallen within the scope of the waiver, all the other claims, which is why the government devoted about 15 pages of its response brief to re-raising the motion to enforce, uh, in this appeal. We get your point. If there are no further questions, I believe that everything has been adequately covered, and I'd ask you to, uh, affirm and pardon and dismiss and pardon the appeal. Thank you. I think council had another 15 or 20 seconds, 16 seconds. No need for that. Okay, thank you. Council are excused. Case is submitted.